**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KATHY PABST; JAMES GILLEY;
and STEVE BARTON,

      Plaintiffs-Appellees and
      Cross-Appellants,

v.

OKLAHOMA GAS & ELECTRIC
COMPANY,

      Defendant-Appellant and
      Cross-Appellee.

Nos. 99-6108 and 99-6150

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 97-CV-1652-L)**

---

Deborah H. Bornstein, Gardner, Carton & Douglas, Chicago, Illinois (Hugh D.
Rice, Roberta Browning Fields, Rainey, Ross, Rice & Binns, Oklahoma City,
Oklahoma, and Katherine N. O'Connell, Gardner, Carton & Douglas, Chicago,
Illinois, with her on the briefs), for the Defendant-Appellant and Cross-Appellee.

Andrew W. Lester (Susan B. Loving and Shannon F. Davies on the briefs), Lester,
Loving & Davies, P.C., Edmond, Oklahoma, for the Plaintiffs-Appellees and
Cross-Appellants.

---

Before **SEYMOUR**, Chief Judge, **KELLY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

We again explore the question of when "on-call" time becomes sufficiently onerous to render it compensable under the Fair Labor Standards Act ("FLSA"). Surveying our precedents and applying them to the facts of this case, we conclude that plaintiffs' on-call duties requiring them to continually monitor automated alarms by pager and computer were compensable under the FLSA. In so holding, we reject the argument that on-call monitoring time is not compensable unless contemporaneously reported to the employer as overtime. Further, we uphold the district court's determination that the employer's FLSA violation was not willful, and affirm both the award of prejudgment interest and the denial of liquidated damages. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Plaintiffs are Electronic Technicians in Oklahoma Gas & Electric's ("OG&E") Facility Operations Department. Plaintiffs Pabst and Gilley were Electronic Technician I's ("Tech 1s") and plaintiff Barton was an Electronic Technician II ("Tech 2"). The three plaintiffs, along with two other employees, monitored automated heat, fire, and security systems in several OG&E buildings. Prior to an August 1994 reduction in force, these duties required twelve on-site employees working three eight-hour shifts.

Plaintiffs were on call to monitor OG&E building alarms weekdays from 4:30 p.m. to 7:30 a.m. and twenty-four hours a day on weekends. During these hours, alarms went to computers at Pabst and Gilley's homes, as well as to pagers for all plaintiffs. After October 1994, Barton began to receive alarms at home via lap-top computer. Plaintiffs were required to respond to the alarms initially within ten minutes, then, after October 1996, within fifteen minutes. Failure to respond within the time limit was grounds for discipline. Each plaintiff was assigned, and required always to carry, an alpha-numeric pager. These pagers were only 70% reliable. The short response time, coupled with unreliable pagers, forced plaintiffs to remain at or near their homes while on call.

The district court found that plaintiffs received an average of three to five alarms per night, not including pages for security issues. Although not all alarms required plaintiffs to report to the office—it appears many could be fixed by remote computer—the district court found it took an average of forty-five minutes to respond to each alarm. Neither party disputes those findings on appeal.

At trial, the parties did dispute whether a rotational on-call schedule was ever proposed or implemented. Acknowledging the dispute, the district court found that "[c]ontrary to OG&E's contention, an examination of the overtime hours actually billed by plaintiffs does not demonstrate that a rotational schedule

was ever in effect; rather, the records reveal significant overlap among the technicians, which indicates to the court that no rotational schedule was ever implemented prior to June 1997." (I Appellant's App. at 57.)  The district court also found a rotational schedule would not have been feasible because of the frequency of alarms and plaintiffs' differing areas of expertise.

According to plaintiffs, their supervisor instructed them to report only on-call time spent responding to an alarm.  OG&E paid plaintiffs for at least one hour for each alarm to which they responded, and two hours if they had to return to OG&E facilities.  Plaintiffs apparently reported some, but not all, of the alarms they answered, but did not claim as overtime the remainder of their time spent on call.

Considerable testimony was presented regarding the extent to which monitoring interfered with plaintiffs' personal activities.  Most significantly, an average of three to five alarms per night, each requiring on average forty-five minutes of work, severely disrupted plaintiffs' sleep habits; indeed, they testified to rarely experiencing more than five hours of uninterrupted sleep per night.  In addition, even during waking hours, plaintiffs were unable to pursue many personal activities while on call because of the need to come into their homes to check their computers every fifteen minutes.

The district court found plaintiffs' on-call time compensable under the FLSA and awarded them compensation for fifteen hours per weekday and twenty-four hours per Saturday and Sunday, less any hours already paid for responding to alarms. Because it found OG&E's violation was not willful, however, the district court limited recovery to the two-year limitations period. It also refused to award liquidated damages, finding that the FLSA violation was reasonable and in good faith. OG&E appeals the district court's rulings on liability, damages, and prejudgment interest, while plaintiffs cross-appeal the district court's ruling denying liquidated damages and its finding of no willful violation.

## II

"We review the district court's findings of fact under the clearly erroneous standard; conclusions of law we review de novo." Armitage v. City of Emporia, 982 F.2d 430, 431 (10th Cir. 1992) (citations omitted).

With certain exceptions not relevant here, the FLSA requires an employer to pay a minimum wage for each hour it "employ[s]" an employee, as well as an overtime premium for hours in excess of forty per week. See 29 U.S.C. §§ 206, 207, 213. "Employ" is defined as including "to suffer or permit to work." Id. § 203(g). The pertinent question, and one with which courts have struggled, is whether on-call time is "work" for purposes of the statute. The FLSA does not

explicitly address the issue of on-call time. [1] Courts, however, have developed a jurisprudence of on-call time, based on the Supreme Court cases of Armour & Co. v. Wantock, 323 U.S. 126 (1944), and Skidmore v. Swift & Co., 323 U.S. 134 (1944). Those cases determine the relevant inquiry to be whether an employee is "engaged to wait" or "wait[ing] to be engaged," Skidmore, 323 U.S. at 137, or, alternatively, whether on-call time is spent predominantly for the benefit of the employer or the employee, see Armour, 323 U.S. at 133. Necessarily, the inquiry is highly individualized and fact-based, see Skidmore, 323 U.S. at 136-37; Norton v. Worthen Van Serv., Inc., 839 F.2d 653, 654 (10th Cir. 1988), and "requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances," Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir. 1989) (citing Skidmore, 323 U.S. at 137). We also focus on the degree to which the burden on

[1] Although regulations promulgated by the Department of Labor address that issue, they are unhelpful to our analysis because they fail to anticipate a scenario, like that in the present case, in which an on-call employee is able to perform his or her duties from a location away from the employer's premises. See 29 C.F.R. § 785.17 (stating that an "on call" employee is working if "required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes"). More helpful are those regulations applicable to fire protection and law enforcement employees. See 29 C.F.R. § 553.221(d) (stating that time spent on call is compensable if "the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits").

the employee interferes with his or her personal pursuits.    See Armitage , 982

F.2d at 432.  Several facts are relevant in assessing that burden: number of calls,

required response time, and ability to engage in personal pursuits while on call.

See id.; Renfro v. City of Emporia   , 948 F.2d 1529, 1537-38 (10th Cir. 1991).

### A

OG&E argues that it did not know plaintiffs were working the entire time

they were on call and thus did not "suffer or permit" them to work.  29 U.S.C.

§ 203(g).  Its theory goes as follows:  Plaintiffs were responsible for reporting

their own overtime; [2] because they reported only time spent responding to calls

(and apparently not even all of that), rather than       all of their on-call time, OG&E

lacked knowledge that they were working and therefore did not suffer or permit

them to work.  This argument misinterprets the nature of the on-call time inquiry

and borders on the disingenuous.

As a factual matter, OG&E's purported lack of actual knowledge is

dubious.  Plaintiffs cite record testimony detailing a reprimand Pabst received for

attempting to report the entire time spent monitoring systems as overtime.

Although OG&E attempts to discount this testimony because the incident

occurred after the cessation of the particular on-call monitoring system at issue

---

[2]  Plaintiffs worked a forty-hour week in addition to their time on call.
Thus, to the extent on-call time was working time, it was compensable at the
overtime rate.  See 29 U.S.C. § 207.

-7-

here, the testimony nevertheless lends support to plaintiffs' assumption that it would have been futile—or even harmful—for plaintiffs if they had attempted to report all of their on-call time as overtime. More significantly, OG&E's policy informed plaintiffs they would be compensated only for on-call time spent responding to an alarm. The only logical inference was that they would not be compensated for time spent monitoring their computers and pagers, unless they took some specific action responding to an alarm. To claim, then, that OG&E did not know plaintiffs were working because they did not report every hour of their evenings and weekends as overtime is misleading. While OG&E arguably may have lacked knowledge of the legal proposition that the FLSA required compensating plaintiffs for their on-call time under the system at issue, OG&E certainly knew that plaintiffs were performing the duties they had been assigned.

OG&E relies heavily on Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986) for its knowledge theory. In Davis, 792 F.2d at 1275, the court found that "Food Lion has an established policy which prohibits employees from working unrecorded, so-called 'off-the-clock', hours." Davis argued that Food Lion's "Effective Scheduling" system required him to work such off-the-clock hours in order to perform his required duties and avoid reprimand. See id. at 1275-76. The Fourth Circuit held the FLSA "required Davis to prove Food Lion's actual or constructive knowledge of his overtime work," id. at 1276, and found no clear

error in the district court's "factual finding that Food Lion has no actual or constructive knowledge of Davis's off-the-clock work," id. at 1277.

Davis is not applicable to the case before us. First, there is no evidence of anything like an explicit prohibition on plaintiffs' performing after-hours monitoring duties; on the contrary, such was the very essence of their responsibilities. Moreover, Davis was not, as plaintiffs correctly note, an on-call time case. In the on-call context, an employer who creates an on-call system obviously has constructive, if not actual, knowledge of employees' on-call duties. An employer must evaluate whether those duties are compensable under the FLSA, and if the employer concludes they are not, the employees do not bear the burden of submitting overtime requests for hours that fall outside the definition of what the employer classifies as compensable. Plaintiffs reported (apparently with some omissions) the hours to which they were entitled under OG&E's policy. That they did not report the entirety of their remaining on-call hours does not preclude the obvious conclusion that OG&E had knowledge of their on-call status.

OG&E's contention that the existence of a rotating on-call schedule prevented it from gaining actual or constructive knowledge of the full extent of plaintiffs' on-call hours implicates a disputed issue of fact. We review the district court's resolution of that dispute for clear error. See Armitage , 982 F.2d

at 431.  If plaintiffs were only on call one week out of three, there would certainly be a problem with each claiming on-call time for every week.  However, as the district court noted, the alleged existence of a rotational schedule is contradicted by the significant overlap in the overtime hours reported by plaintiffs.  Indeed, in its motion for reconsideration, OG&E conceded that even under its preferred "rotational schedule" analysis—under which one plaintiff was on call for a week running from 7:30 a.m Friday to 7:30 a.m. Friday,   rather than calendar weeks—there were weeks when both Pabst and Barton recorded time.  Given that concession the district court's resolution of the disputed factual question of the existence of a rotational schedule did not amount to clear error.

**B**

Whether a particular set of facts constitutes compensable "work" under the FLSA is a legal question we review de novo.   See Berry v. County of Sonoma   , 30 F.3d 1174, 1180 (9th Cir. 1994).  In     Renfro , 948 F.2d at 1536-38, we granted FLSA compensation to firefighters for their on-call time.     Renfro 's facts include the following:

> the firefighter must be able to report to the stationhouse within twenty minutes of being paged or be subject to discipline; that the on-call periods are 24-hours in length; and primarily that the calls are frequent—a firefighter may receive as many as 13 calls during an on-call period, with a stated average frequency of 3-5 calls per on-call period.

Id. at 1535 (quoting Renfro v. City of Emporia, 729 F. Supp. 747, 751 (D. Kan. 1990)).

OG&E emphasizes that all but one published Tenth Circuit case addressing on-call time have found it non-compensable. See, e.g., Andrews v. Town of Skiatook, 123 F.3d 1327, 1328-32 (10th Cir. 1997); Gilligan v. City of Emporia, 986 F.2d 410, 413 (10th Cir. 1993); Armitage, 982 F.2d at 432-33; Boehm, 868 F.2d at 1185; Norton, 839 F.2d at 654. But see Renfro, 948 F.2d at 1538. Counting published cases, however, is meaningless in resolving a fact-intensive question such as the compensability of on-call time. Rather, the proper question is which case is most analogous. Comparing Renfro with the cases cited by appellant reveals that a critical distinction in the highly fact-specific inquiry is the frequency of calls. See Gilligan, 985 F.2d at 412 ("[W]e noted in Renfro that the frequency of call backs was the factor which the Renfro district court cited as distinguishing that case from others which had previously held that on-call time was not compensable."); cf. Armitage, 982 F.2d at 432 (holding on-call time non-compensable, unlike in Renfro, because the plaintiffs were "called in on average less than two times per week"). As in Renfro, 958 F.2d at 1537, plaintiffs experienced three to five calls per on-call period. Additionally, although plaintiffs did not always actually report to OG&E's plant, they were required to take some action by computer within fifteen minutes, another burdensome

element present in Renfro, id. In sum, this case is far more analogous to Renfro than to the more numerous precedents cited by OG&E.

Although OG&E complains bitterly against having to compensate plaintiffs for working twenty-four hours a day, seven days a week, the cost to an employer of an "always on call" arrangement does not mean that such a system is not cognizable under the FLSA, so long as the on-call time qualifies as work under the relevant FLSA precedents. While one circuit has held that always being on call, while extremely burdensome, does not in and of itself make the on-call time compensable for FLSA purposes, see Bright v. Houston Northwest Med. Ctr. Survivor, Inc., 934 F.2d 671, 678-79 (5th Cir. 1991) (en banc), another circuit found that requiring employees to monitor and respond all day, every day is a factor weighing in favor of compensability, see Cross v. Arkansas Forestry Comm'n, 938 F.2d 912, 916-17 (8th Cir. 1991) (holding that on-call time is compensable under the FLSA because employees were required to continuously monitor transmissions and respond within thirty minutes, and because they were subject to on-call status twenty-four hours per day for every day of a work period). We agree with both Bright and Cross: Although always being on call is not dispositive, such an added burden is relevant in assessing the extent to which all-the-time on-call duty deprives employees of the ability to engage in personal activities.

The only significant difference between the burden on the plaintiffs in Renfro and the burden on Pabst, Gilley, and Barton is that plaintiffs here often did not have to report to the employer's workplace in order to respond to calls. This lighter burden, however, is offset by the fact that plaintiffs, unlike the firefighters in Renfro, were not on call for "six shifts of twenty-four hours each in a 19-day cycle," Renfro, 948 F.2d at 1531, but rather during all of their off-premises time. The frequency of calls here actually is greater than in Renfro because plaintiffs' calls during weekdays occurred during a fifteen hour, rather than a twenty-four hour, period. Additionally, in Renfro, we found on-call time compensable despite the fact that the firefighters "had participated in sports activities, socialized with friends and relatives, attended business meetings, gone shopping, gone out to eat, babysitted, and performed maintenance or other activities around their home." Id. at 1532 (citation and internal quotation omitted). Renfro controls the application of the FLSA to the facts before us, and leads us to hold that the district court was correct in finding plaintiffs' on-call time compensable.

### III

We next consider OG&E's claims that the award of overtime compensation should be reduced by subtracting out several time periods.

We reject, as a matter of law, OG&E's argument that time spent in personal pursuits should be subtracted. The relevant inquiry in on-call cases is not whether plaintiffs' duties prevented them from engaging in any and all personal activities during on-call time; rather it is "whether 'the time is spent predominantly for the employer's benefit or the employee's.'" <u>Boehm</u>, 868 F.2d at 1185 (quoting <u>Armour</u>, 323 U.S. at 133). This is a yes-no inquiry—whose benefit predominated? OG&E cites no authority for the proposition that a court must determine whose benefit predominated during each on-call hour. <u>Cf.</u> <u>Renfro</u>, 948 F.2d at 1532, 1538 (holding firefighters' on-call time compensable even though they engaged in some personal pursuits during that time).

OG&E's other arguments for reductions in the damages award, which pertain to individual plaintiffs, are factual issues subject to clear error review. <u>See</u> <u>Armitage</u>, 982 F.2d at 431.

OG&E contends Gilley was not responsible for after-hours alarms from October 1996 through May 1997. The record reflects that from October 1996 to June 1997, Pabst and Barton were responsible for answering alarms, but would call Gilley if they were unable to resolve the problem. Although plaintiffs' supervisor, Randy Valdez, testified that Gilley "wasn't on call or he was taken out of the rotation, so after working hours I didn't expect him to do anything," (V Appellant's App., Tab 30, at 554), Gilley testified that he "was never removed

out of the system," ( id. at 328), and that he continued to be confined to his home after hours and to regularly respond to calls to assist Barton or Pabst. We find no clear error in the district court's decision to credit Gilley's rather than Valdez's account of his duties during the period he was on backup on-call duty.

OG&E argues that Barton should not have been awarded overtime compensation from October 1994 through October 1, 1996 because during that time he was monitoring alarms only by pager and not by computer. OG&E primarily focuses on the comparatively small amount of remote overtime Barton charged during that period, as compared to Gilley and Pabst. However, we are persuaded the district court did not clearly err in determining that Barton, like Gilley and Pabst, received between three and five pages per night during this period, despite the comparatively smaller amount of overtime Barton recorded. We note that Barton testified that he did not report overtime for every alarm he received, but only those in response to which he either went to an OG&E location or "dialed into" OG&E and attempted a repair. ( Id. at 472.) The district court's finding is supported by Barton's differing responsibilities as a Tech 2, which involved "assist[ing] each of the tech 1s." ( Id. at 436.) Even though Barton initially did not have a computer at home, he testified that he was required to keep his pager on at all times and that calls prevented him from getting more than five hours of uninterrupted sleep and engaging in personal activities. While the

-15-

record does not make especially clear the precise contours of Barton's duties during the relevant period, OG&E does not point to anything in the record that renders clearly erroneous the district court's finding that he received a similar number of calls to the other plaintiffs and experienced similar interference with sleep and other personal activities.

Finally, as discussed above, we find no clear error in the district court's factual finding that OG&E's alleged rotational schedule was never put into effect. We therefore decline to overturn the district court's award of overtime compensation.

**IV**

Prejudgment interest is ordinarily awarded in federal cases, although it is not available as a matter of right. See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763 (10th Cir. 1997). "[T]he standard of review on appeal is whether the trial court abused its discretion in awarding . . . prejudgment interest." Id. (quoting U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1255 n.43 (10th Cir. 1988)). OG&E first argues that the award was an abuse of discretion because it did not know of the alleged overtime, an equitable factor weighing against the award of interest. As discussed above, this ignorance argument is without merit because OG&E created the on-call policy and the terms under which plaintiffs could submit overtime.

OG&E advances a second argument—prejudgment interest should be awarded only from the time the complaint was filed, rather than for the entire period of recovery. The general rule, however, is that interest runs "from the time of the loss to the payment of judgment." Zuchel v. City and County of Denver, 997 F.2d 730, 746 (10th Cir. 1993) (quoting U.S. Indus., Inc., 854 F.2d at 1256). We thus discern no abuse of discretion in the district court's award of prejudgment interest.

## V

Plaintiffs cross-appeal the district court's denial of liquidated damages. We review this issue for abuse of discretion: "[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages . . . ." Department of Labor v. City of Sapulpa, 30 F.3d 1285, 1289 (10th Cir. 1994) (quoting 28 U.S.C. § 260) (emphasis added). The district court found that OG&E's actions were reasonable and in good faith for several reasons: OG&E paid double time, rather than just time-and-a-half, for each hour of overtime plaintiffs reported; it permitted plaintiffs to report an hour every time they responded to an alarm, even if they actually spent as little as five minutes; and it was not fully aware of the extent of

-17-

the burden on plaintiffs until some time in 1997, at which point it took corrective action.

Perhaps we might reach a different conclusion as fact-finders of the first instance, but we find it difficult to call the district court's conclusion an abuse of discretion. Admittedly, the record here is devoid of the sort of evidence—reliance on attorneys or other experts in personnel matters—that courts have found particularly persuasive in holding FLSA violations reasonable. See, e.g., Cross, 938 F.2d at 917-18 (holding it "was objectively reasonable . . . to rely on the decisions of the state's personnel experts"). Nevertheless, because the law of on-call time under the FLSA is fact-sensitive, and because the facts relied upon by the district court lend at least some support to the conclusion that OG&E acted in good faith under a reasonable, albeit mistaken, belief that its particular on-call scheme was non-compensable under the statute, we find no abuse of discretion. See United States v. Robinson, 39 F.3d 1115, 1116 (10th Cir. 1994) (when reviewing a decision for abuse of discretion, "[w]e will not challenge [the district court's] evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record").

Additionally, although we uphold the district court's finding that no rotational schedule was ever actually put into effect, the record could support a

conclusion that OG&E supervisors at some times may have operated under a mistaken but good faith belief that such a schedule was in place. Detailed examination of plaintiffs' overtime records might have remedied this mistaken belief; however, given the lack of clarity in the record regarding when and how plaintiffs complained of their onerous on-call duties, we do not view the district court's finding of OG&E's reasonableness and good faith as an abuse of discretion.

## VI

Similarly, we reject plaintiffs' contention that the district court erred in holding OG&E's violation of the FLSA was not willful and consequently limiting the damages award to the statute's two year limitations period. See 29 U.S.C. § 255(a). "The standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" Reich v. Monfort, Inc., 144 F.3d 1329, 1334 (10th Cir. 1998) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)) (further citations omitted). "Whether an FLSA violation is willful is a mixed question of law and fact, but we believe the factual issues predominate and therefore consider the issue under a clearly erroneous standard of review." Id. (citing Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1079 (1st Cir. 1995)). We find no such error: The same facts that support the district court's conclusion

that OG&E's failure to compensate plaintiffs for all of their on-call time was reasonable and in good faith support the district court's conclusion that OG&E's violation of the FLSA was not willful.

## VII

The judgment of the district court is  **AFFIRMED** .