**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CINDY K. BEASLEY; CHERYL A.
KRAFT; JOLYNN OFFICER; DEBBY
L. WAIR; AUD LANGSHOLT;
ESTHER CUELLAR; JOANN
MILLER; MICHAELYN S.
WALKER,

Plaintiffs-Appellants,

v.

HILLCREST MEDICAL CENTER,
a corporation,

Defendant-Appellee.

Nos. 02-5121 & 02-5147
(D.C. No. 00-CV-1028-EA)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TACHA**, Chief Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

In case No. 02-5121, plaintiffs appeal the district court's grant of summary judgment in favor of defendant Hillcrest Medical Center (Hillcrest) on their claims for overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219. In case No. 02-5147, plaintiffs appeal the district court's imposition of discovery sanctions. Because plaintiffs' summary judgment evidence raised a triable issue whether they were primarily engaged in work-related activities during their lunch periods, we reverse the judgment on their claims and remand for further proceedings. Because plaintiffs failed to make any argument regarding the propriety of the discovery sanctions, we affirm the district court's imposition of sanctions.

Plaintiffs are, or were, employed by Hillcrest as nurses or technicians. Generally, plaintiffs were paid for the shifts they worked minus one half hour for lunch. Hillcrest had a procedure available to pay employees for any overtime worked, requiring the employees to complete a "Time Exception Report" and obtain their supervisors' signature. *See* Aplt. App. at 113-14. It is undisputed that Hillcrest paid all requests for overtime, including over a hundred missed lunches for one of the plaintiffs. Plaintiffs allege that they did not request payment for interrupted lunches because they thought they were only entitled to

overtime if they completely missed the meal. No evidence was presented as to the source of this understanding.

At a union meeting, plaintiffs were informed that they were entitled to overtime compensation for meals which were interrupted for a work purpose. Plaintiffs brought this action seeking overtime compensation for their interrupted meals over a three-year period. On July 5, 2002, the district court granted summary judgment in favor of Hillcrest and against plaintiffs, ruling that plaintiffs failed to raise a triable issue whether their meal periods were spent predominantly for Hillcrest's benefit. On August 26, 2002, the district court entered judgment against plaintiffs assessing discovery sanctions. On appeal, plaintiffs argue only that they presented sufficient evidence to survive summary judgment.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Revell v. Hoffman*, 309 F.3d 1228, 1231 (10th Cir. 2002), *cert. denied*, 71 U.S.L.W. 3751 (U.S. Oct. 6, 2003). A district court properly grants summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "To determine whether a dispute is genuine, we must consider whether a reasonable jury could return a

verdict for the nonmoving party." *Revell*, 309 F.3d at 1232 (further quotation omitted).

To make a case for overtime compensation, plaintiffs must show that they performed more than forty hours of work in a week but were not paid for the excess time. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding that an FLSA plaintiff has the burden of proving "that he has in fact performed work for which he was improperly compensated and . . . [must] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference").

Federal regulations discuss when a meal period should be counted as work time, defining a bona fide meal period as a "rest period" during which an employee "must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19. Plaintiffs argue that they were not completely relieved from duty because their lunch periods were often interrupted by work-related tasks. The question is not whether their meals were interrupted, however, but whether the degree of interruption caused them to spend their meal periods primarily for Hillcrest's benefit. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1157-58 (10th Cir. 1992) (holding appropriate standard for evaluating whether meal periods are compensable is whether the employee's time is spent predominately for the benefit of the employer).

In *Lamon*, we held that police officers raised a triable issue regarding the compensability of their meals because of the number and range of restrictions placed on them by their employer. *Id.* at 1156. The officers presented evidence that they were required to take their meals within the city limits or obtain permission to dine close to the city; to leave a phone number or monitor a mobile radio; to respond to emergency calls or personnel shortages; to respond to citizen inquiries or requests; to confront crimes committed in their presence; and to act in a responsible and professional manner. In addition, the officers were not permitted to do personal errands during the meal period. We emphasized that simply because an officer "is on call and has some limited responsibilities during meal periods does not perforce mean the officer is working." *Id.* at 1157.

Plaintiffs argue that the decision in *Lamon* does not apply to them because the court in that case was interpreting 29 C.F.R. § 553.223(b), which is specifically aimed at law enforcement personnel, and not 29 C.F.R. § 785.19, which applies more generally. Although this may be true, § 553.223(b) incorporates the standards from § 785.19, and we noted in *Lamon* that "our contrasting of the two sections, § 553.223(b) and § 785.19, does not mean that the 'completely relieved from duty' standard as used in the latter section should necessarily take on a different meaning than that of the former section."

*Id.* at 1158 n.18. Plaintiffs have not advanced a persuasive rationale for distinguishing between the two sections.

The inquiry whether an employee's time is spent "predominately for the benefit of the employer" is "highly individualized and fact-based." *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000). Thus, we must consider each plaintiff's evidence individually to determine whether it raised a factual dispute regarding the nature of the plaintiff's activities during her meal period.

Plaintiff Langsholt testified that when working as a labor and delivery nurse, she was required to watch the monitors in the break room during her meal periods; she was unable to relax because she had to remain alert at all times and had to respond immediately if one of the monitors showed a problem; that her meal periods were often interrupted by doctors requesting that she check on patients; and that she engaged in these monitoring and response duties during approximately ninety-five percent of her meal periods. Aplt. App. at 274-75.

Plaintiff Beasley testified that she would take her meal once her patients were taken care of; that there were times that she would eat a sandwich while working on the computer; that on weekends and nights when there were only two nurses they would eat at the desk while watching patient monitors and answering the phone; and that her meal breaks were interrupted "[m]ost all the time," as

many as three or four times per meal, for things like phone calls, conversations with doctors, and administering pain medication. *Id.* at 300-01.

Plaintiff Miller testified that she was a secretary, monitor tech, and a nurse aide in the intensive care unit. She testified that she never had an uninterrupted meal, and that she would be interrupted "at least 75 percent of the time" by phone calls, patients using their call buttons, new admissions into the unit, or watching monitors. *Id.* at 264. She testified that she would eat her meal while watching monitors or doing work, and that she never had time to do personal activities during her meal period. *Id.* at 265.

Plaintiff Kraft testified that she was usually the only IV nurse on her shift, that she carried a pager, and that if her pager went off during her meal she had to respond. *Id.* at 284. She testified that she could not specify how many times or for what reasons her meal breaks were interrupted, but that it happened on a daily basis. Kraft testified that her pager went off approximately every ten to fifteen minutes because she was often the resource person for other nurses. *Id.* at 284-85. She testified that when she took a call during her meal, it often took fifteen or twenty minutes to discuss the issue. *Id.* at 289.

Plaintiff Walker also was an IV nurse. She testified that she wore a pager which was "usually always going off because [she] was also backup for . . .

everybody." *Id.* at 206. She also had to respond to code blues. *Id.* Walker testified that she did not think she ever had an uninterrupted meal. *Id.*

Plaintiff Cueller testified that she was often interrupted during her meal period. *Id.* at 218. She testified that when she worked in the cardiac unit, she was subject to call during her meals for a variety of reasons, including answering questions from a patient's family members or doctors, getting an IV, or responding to a code. *Id.* She testified that most of her interruptions were more than five minutes. *Id.* at 222. She also testified that she could not leave the hospital during lunch because there was not enough time to do so. *Id.* at 221.

Plaintiff Officer testified that she rarely got an uninterrupted lunch, and that her meals were interrupted "on a daily basis, not just once but several times during . . . lunch." Aplt. App. at 234-35. She estimated that ninety-five percent of her lunches were interrupted. *Id.* at 234. She gave examples of interruptions that happened "on a regular basis" including doctors' phone calls, calls from patients' families, patients in distress, or the arrival of a critical medication. *Id.* at 231-32. She testified it was her impression she was not allowed to leave the building, and that "lots of times" it took her three hours to eat her lunch. *Id.* at 232, 234. *Id.* at 231, 234.

Plaintiff Wair testified that she was seeking compensation for all meals when she was the charge nurse because she was not allowed to leave the floor.

*Id.* at 243. She testified that she also sought compensation for days that she worked as a staff nurse because there had to be a certain amount of licensed nurses on the floor, and for visiting days because her meal would be interrupted to unlock the door for visitors and to interact with their families. *Id.* at 243-44. Wair testified that her meals were also interrupted by phone calls and questions from other staff. *Id.* at 246. She testified that her meals were interrupted two to three times a week. *Id.* at 245.

In *Lamon*, we held that the officers raised a triable issue by showing that they were limited as to the location of their meals and were subject to call for a variety of reasons. See 972 F.2d at 1155-57. Here, plaintiffs presented similar evidence that they were restricted as to where they could take their meals, and that their meals were frequently interrupted for a variety of reasons. Moreover, evidence that plaintiffs spent their meal periods watching monitors or working on a computer could support a finding that they spent those meals predominately for the benefit of Hillcrest. *See* 29 C.F.R. § 785.19 (explaining that an employee is not relieved from duty if required to eat at his or her work station). We conclude plaintiffs raised a triable issue whether their "time or attention [was] taken up principally by official responsibilities that prevent[ed them] from comfortably and adequately passing the mealtime." *Lamon*, 972 F.2d at 1157-58.

Hillcrest argues that because it has an overtime reporting system in place, and plaintiffs' managers testified in affidavits that they were not aware that plaintiffs were working uncompensated overtime, it cannot be held liable under the FLSA. We rejected a similar argument in *Pabst*, noting that even if the employer did not know that the employees' time met the legal definition of work, it "certainly knew that plaintiffs were performing the duties they had been assigned." 228 F.3d at 1133.

Hillcrest also argues that the plaintiffs did not meet their burden of showing how many hours they worked in excess of the statutory work week. It is not clear why plaintiffs did not know which or how many shifts they worked during the period in question, given Hillcrest's record-keeping requirements. However, because the district court specifically declined to rule on the sufficiency of plaintiffs' evidence in this regard, we will not make this assessment on appeal. We therefore remand plaintiffs' claims for further proceedings on the issue.

Although plaintiffs purported to appeal the district court's imposition of discovery sanctions, they did not raise any argument on this issue in their briefs. We therefore affirm the district court's grant of discovery sanctions. *See Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 979 n.43 (10th Cir. 1990) (holding party abandoned issue that was raised in docketing statement but not argued in brief).

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED in part and REVERSED in part, and plaintiffs' FLSA claims are REMANDED for further proceedings consistent with this decision.

Entered for the Court


Deanell Reece Tacha
Chief Judge