962 A.2d 1037

**Samuel HESS, et al.**

**v.**

**DEPARTMENT OF JUVENILE SERVICES**

**Samuel Harmon**

**v.**

**Department Of Juvenile Services.**

**Nos. 2025, 2043, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 31, 2008.

**592**

Hillary Galloway, Davis (Davis & Associates Law Office, PA on the brief), of Towson, Linda D. McKeegan (Keith J. Zimmerman, Kahn, Smith & Collins, PA, on the brief), of Baltimore, for appellant.

Kendra Y. Ausby (Douglas F. Gansler, Attorney General, on the brief), Baltimore, for appellee.

Panel: MEREDITH, WRIGHT, RAYMOND G., THIEME, JR. (Ret'd, Specially Assigned), JJ.

THIEME, J.

This is the second appeal to this Court by Samuel Hess, Edward Martin, David Weimer, and Samuel Harmon from a decision of an administrative law judge ("ALJ"),[1] rejecting their claim that they are entitled to compensation for the time they are required to spend "on call" in their employment as Juvenile Transportation Officers ("JTOs") with the Maryland Department of Juvenile Services. The case was remanded by this Court in an unreported opinion by Judge Mary Ellen Barbera (since elevated to the Court of Appeals), filed on August 9, 2006.[2] We shall restate portions of that opinion where pertinent.

The crux of the parties' variously worded questions presented is whether the ALJ committed legal error in the manner in which he defined the breadth of the provision in COMAR 17.04.11.02B(1)(e), which renders time away from the work place compensable where "the employee is on call and waiting for work, and the employee's personal activities are substan-

---

1. The ALJ issued both challenged decisions, the first on July 20, 2004, and the second on February 6, 2007. Each was issued separately, in materially identical form, as to Mr. Harmon. The first was affirmed by the Circuit Court for Allegany County, the Honorable W. Timothy Finan presiding, on March 10, 2005, and the second was affirmed by the Circuit Court for Baltimore City, the Honorable Stuart R. Berger presiding, on October 1, 2007.

2. *Samuel Harmon, et al. v. Department of Juvenile Services*, No. 240, September 2005 Term. (Judges Deborah Eyler and Sharer were the other judges on the panel).

tially restricted." For the reasons that follow, again we must conclude that the ALJ committed legal error, vacate the judgment of the circuit court affirming the ALJ's decision, and remand the case to that court with directions to remand the case to the Office of Administrative Hearings.

## Facts and Legal Proceedings[3]

The Department employs eight JTOs. As part of their duties as JTOs, appellants are required to be on call to provide emergency transportation services and to handle emergency situations for juveniles. The nature of the on-call duty is not disputed. The JTOs rotate being on call throughout the year, such that each JTO is assigned to on-call duty for one week, every eight weeks. While on call, the JTO is required to provide 24–hour emergency transportation for the night detention runs and for medical appointments as needed throughout the youth centers.

According to one employee witness's undisputed testimony, the on-call driver is issued a pager on the Monday of his on-call week and must carry that pager until the following Monday. During the week that a JTO is on call, he or she also works a regular weekday shift from 1 p.m. to 9 p.m. Although other drivers are assigned to work eight hour shifts, starting at either 4 a.m. or 6 a.m. during the on-call time, JTOs, according to appellant Harmon, "still have to be available because there [ ][are] restrictions on drivers, how many kids they can haul."

The on-call JTO must be prepared to respond by telephone within thirty minutes of receiving a page. According to appellant Hess, he typically does not receive more than two calls during the week that he is on call. After responding, the JTO generally is required to report in person to the juvenile's holding place. When told to report to the pick-up site, the JTO must change into uniform, pick up the transportation van at a designated location, perform a safety check of the van and

---

**3.** The initial part of the instant opinion is restated (without quotation marks), with some additions and clarifications, from our prior opinion.

the equipment, and then drive to the pick-up site. All of that must be accomplished within two hours of receiving the page or the JTO may be subject to discipline, according to the Department's written policy.

All the employee witnesses testified that they could not leave the house without taking the risk that, if paged, they would not be able to respond within the two-hour response time that the Department mandates. They lived and worked in Western Maryland, where they could have to drive well over 100 miles to the pick-up sites after driving to the sites where the vans were kept. They testified to particular activities they gave up during the on-call weeks, most away from home (church, club, and social activities, visiting family members, eating in restaurants, viewing children's team sports, camping, hunting, and fishing), but some at home (home chores that could not be interrupted, such as pouring concrete, or that involved noisy tools that would prevent hearing the pager). The ALJ acknowledged that it had also been pointed out, and he did not question, that they could not drink alcoholic beverages while on call. He generally found the testimony supporting appellants' factual claims credible. By agreement, no new evidentiary hearing followed the remand.

The parties appear to agree that appellants have never been disciplined for missing calls or exceeding the two-hour response time.[4] The on-call policy had been in effect for a number of years, but it was not formalized in writing until November 18, 2002.

On June 20, 2003, appellants requested to be paid for their time spent on call. The Department denied their request on July 15, 2003.

Appellant Harmon filed a grievance and appellants Hess, Weimer, and Martin (hereinafter "Hess et al.") together filed a combined grievance. The two grievances were identical in

---

4. Appellants explained that they have not been disciplined because they have minimized their response times to the pick-up sites, even where they have exceeded two hours, by generally staying at home while on call.

material respect. The two grievances made their way through the agency appeal process and were scheduled for hearings before the ALJ on June 17, 2004. The ALJ first heard the case of Hess et al., and incorporated the record in that case into the record in Harmon's case, which the ALJ heard next.

The evidence and the arguments at the hearing centered on whether appellants' on-call time constitutes compensable "work time" as that term is defined under COMAR 17.04.11.02B(1)(e). That regulation provides,

(1) Work time includes time during which the employee:

\* \* \*

(e) Is not on the employer's premises, but is on call and waiting for work, and the employee's personal activities are substantially restricted.

Although the Department raised the preliminary question of whether appellants are "waiting for work" when they are on call, the parties and the ALJ focused their attention upon whether appellants' personal activities are "substantially restricted" when they are on call.

On July 20, 2004, the ALJ issued two nearly identical decisions, stating in both: "While I agree that the Employees' activities were restricted,[ ] I cannot find that their activities were substantially restricted." In support, the ALJ cited the standard for on call time that is set forth in a regulation promulgated under the Fair Labor Standards Act ("FLSA"), 29 C.F.R. § 785.17, and a federal case interpreting that standard.[5] He did not cite any Maryland case law. The ALJ "conclude[d] as a matter of law that [appellants] [were] not entitled to pay of compensation for being on call, i.e., responding to emergency situations and securing emergency transportation. COMAR 17.04.11.02B(1)(e)."

---

**5.** The cited case is *Gilligan v. City of Emporia, Kan.,* 986 F.2d 410 (10th Cir.1993). In the quoted passage, the court cited three other decisions of its own.

### This Court's Previous Opinion

This Court stated the question presented on the first appeal as "[w]hether the ALJ properly decided that appellants' 'on call' time is not 'work time' within the meaning of COMAR 17.04.11.02B(1)(e) because appellants' personal time is not 'substantially restricted' while they are on call.[ ]" (Footnote omitted.)

In its discussion, the Court initially noted appellants' argument that the ALJ erred by following a federal court's interpretation of the FLSA regulation relating to on-call time, because the Maryland Code's State Personnel and Pension Article ("SPP") § 8–302 provides:

(a) *Construction of Subtitle.*—This subtitle [Overtime Compensation] shall be interpreted and applied, to the extent applicable, in accordance with the federal Fair Labor Standards Act;

(b) *Entitlement.*—All employees subject to this subtitle are entitled to the greater of:

(1) The benefits that are provided in this subtitle; or

(2) To the extent applicable, the benefits required by the federal Fair Labor Standards Act.

The Department countered, the Court further noted, that the ALJ was correct in relying on case law interpreting the on-call regulation promulgated under the FLSA. That regulation, 29 C.F.R. § 785.17, states:

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working on call.

Our opinion continued:

After the parties filed their appellate briefs, the Court of Appeals decided *Dep't of Public Safety and Correctional Servs. v. Palmer*, 389 Md. 443, 886 A.2d 554 (2005). As we

shall explain, *Palmer*, although addressing a different paragraph within COMAR[,] 17.04.11.02B, supports much of appellants' argument on appeal and demonstrates the necessity of a remand for further proceedings before the ALJ.

After acknowledging the "highly deferential standard of review" that pertains to decisions of administrative agencies and of administrative law judges on their behalf, except where "the administrative decision is premised upon an erroneous conclusion of law," [6] the Court approved the ALJ's focus on the federal regulation as well as on the Maryland regulation. The Court explained, however, that the ALJ "must [examine both regulations], first, with an eye toward ascertaining which of the two provisions affords greater benefits to appellants." Turning to the Court of Appeals' decision in *Palmer, supra,* 389 Md. 443, 886 A.2d 554, this Court wrote:

SPP § 8–302 led to the promulgation of COMAR 17.04.11.02B. *See [Comptroller of Maryland v.] Miller,* [169 Md.App. 321], [342], [901 A.2d 229] [(2006)], 2006 WL 1766561, at *12. The *Palmer* Court therefore determined that the "greater benefits" language under SPP § 8–302(b)(1) covers ... the Work Time definition in COMAR 17.04.11.02(B)(1)(g). Consequently, employees are entitled to the greater of the benefits under COMAR or the FLSA. *See* 389 Md. at 454–455, 886 A.2d 554. *Cf. Miller,* [169 Md.App.] [at 352], [901 A.2d 229], 2006 WL 1766561, at *18 (interpreting COMAR 17.04.11.02B(j) and recognizing that, in certain circumstances, state law may go above and beyond the FLSA).

The *Palmer* Court declined to uphold the Department's argument that "job-related work time under [COMAR 17.04.11.02B] ¶ (g) is no broader than under federal law." *Id.* at 454, [886 A.2d 554]. The Court reasoned that if COMAR is no broader than federal law and is "merely

---

6. *See Maryland Aviation Admin. v. Noland,* 386 Md. 556, 571–572, 873 A.2d 1145 (2005) (review limited to determining whether "substantial evidence" supports decision and whether it is "premised on an erroneous conclusion of law," although agency's interpretation and application of statute it administers "should ordinarily be given considerable weight").

coextensive," then the addition of subsection (2) of COMAR 17.04.11.02, *i.e.*, that "[w]ork time includes any other time defined as work time under the Fair Labor Standards Act (FLSA), if applicable," would be superfluous. *See id.* In other words, if the two bodies of law were essentially the same, then there would be no reason to include a catchall provision to capture other situations that the FLSA might cover, but COMAR does not (and vice versa). Consequently, the Court relied on SPP § 8–302 to conclude that "COMAR 17.04.11.02B(2) is intended to be a floor and not a ceiling[,]" and that it "discern[ed] no legislative intent to limit ¶ (g) to the scope of federal law." *Id.* at 454–455, [886 A.2d 554].

The Court went on to hold that "there is no good reason why" the *Palmer* Court's analysis would apply to ¶ (g) and not to ¶ (e), the provision of COMAR 17.04.11.02B in issue here. Accordingly, it wrote:

> The ALJ was required to determine whether, by application of SPP § 8–302, ¶ (e) provides the employees it covers with greater benefits that those provided under the FLSA before determining the ultimate question of whether appellants are entitled to compensation for their time spent on call. Moreover, as the *Palmer* court also made clear, the benefits under ¶ (e) cannot be assumed to be the same as those that the FLSA provides. *See* 389 Md. at 454, [886 A.2d 554].

The Court then instructed the ALJ to compare the benefits available under the COMAR and FLSA on-call provisions and "apply the provision that offers the greater benefits to the question of whether appellants are entitled to compensation." It concluded by noting that under *Palmer*, 389 Md. at 452–453, 886 A.2d 554, the ALJ, not this Court, "must make those determinations in the first instance ... as the final decision maker for the Department, who must construe the statutes and regulations it administers."

Following the remand, the ALJ heard oral arguments and, on February 6, 2007, issued a new decision. We shall discuss the pertinent aspects of that decision below.

## Discussion

Again, we are "limited to deciding the narrow question of whether the ALJ's legal decisions for the agency are 'premised on an erroneous conclusion of law.'" *Palmer*, 389 Md. at 453, 886 A.2d 554. The ALJ accurately paraphrased this Court's instructions as described above, but he elected to determine the breadth of benefits under the State and federal regulations solely by deducing the "plain meaning" of their language. Thus, he wrote:

From the outset, reading both the Federal and State on call provisions, it is clear that the Maryland COMAR provision provides more qualifiers than the Federal counterpart. When dealing with employees who are **NOT** required to remain on the employer's premises, the Federal provision merely states that an employee who is required to leave word at home or with company officials where he may be reached is not working while on call. There are no qualifiers regarding restrictions on personal activities included and the provision flatly states that if not on the employer's premises and essentially only required to respond or otherwise be available to the employer, an employee is not on call and thus not to be compensated. On the other hand, the State provision includes an additional qualifier by stating that an employee who is not required to be on the employer's premises but still required to be available to the employer is not on call **only if the employee's personal activities are not substantially restricted.**

Affording both provisions their ordinary and plain meaning, it is clear that the Maryland provision conveys greater benefit to an employee by considering whether this employee's personal activities are substantially restricted before denying on call compensation while the Federal provision does not. Given this, Md Code Ann., State Pers. & Pens. § 8–302[b] provides:

All employees [subject to this subtitle are entitled] to the greater of:

(1) The benefits that are provided in this subtitle; or

(2) To the extent applicable, the benefits required by the federal Fair Labor Standards Act.

As such, the provisions of COMAR 17.04.11.02 provide the greater benefit and should be applied here.

(Emphasis in original.)

The ALJ did not discuss the federal provision further. Rather, he relied on the definitions of "substantial" in the Merriam Webster Online Dictionary 2006–2007 and in Black's Law Dictionary (6th Edition, page 1428) to "conclude that the phrase 'substantial' means something between scant and total or between slight and complete." Then, after reasoning that a "restriction of activities is a limitation of these activities" and that the word "restricted" alone would have sufficed if the legislature had "meant to include any restriction, however slight, negligible, paltry or flimsy," he further concluded that the legislature "meant to mandate that the restrictions experienced by an employee be 'substantial' or considerably more than slight or negligible before compensation for time spent on call will be granted." [7] The ALJ proceeded to review the evidence and "conclude that while [appellants'] activities were indeed restricted, they were not substantially restricted because the Employees still had the ability, although restricted at times, to use their personal time effectively albeit with some modifications."

█ With all due deference, we do not believe that the ALJ's semantic analysis provides the necessary assurance that he reached the correct legal conclusion about the breadth of coverage of the State regulation or formulated a reliable methodology for the future resolution of claims such as appel-

---

7. This passage reveals that the ALJ read the state's on-call regulation primarily as a limitation on employees' rights. The federal regulation does state (in its second sentence) what is "not working on call." In contrast, COMAR 17.04.11.02B(1)(e) only states what "work time includes"—not what it does not. In light of that fact and the statutory and regulatory establishment of the right to "greater" benefits than those available under the FLSA, recognized in *Palmer* and in our previous opinion, the ALJ should have viewed determination of the employees' claims from a more positive perspective.

lants.' Again, the federal regulation, 29 C.F.R. § 785.17 states:

> An employee who is required to remain on call on the employer's premises *or so close thereto that he cannot use the time effectively for his own purposes* is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working on call.

(Emphasis added.) In treating this provision as practically irrelevant, the ALJ focused entirely on the second sentence. He ignored the emphasized words in the first sentence, which, on their face, appear to create a threshold of relative limitation of personal activity away from the workplace similar to the Maryland regulation's "substantially restricted" standard. The first sentence of 29 C.F.R. § 785.17 does not apply, as the ALJ apparently assumed, only to employees required to stay at their workplaces. The first sentence also specifically applies, in its final clause, to employees who are, for practical purposes, geographically restricted by being on call while away from the workplace (as appellants claim they are), if such restriction has the required adverse impact on their use of on-call time for their "own purposes." To use the ALJ's term, there are "qualifiers" in this more pertinent part of the federal provision: the words "so close" and "effectively." [8] And, like the words "substantially restricted" in the COMAR regulation, those qualifiers require legal interpretation.

 While there is no case law interpreting the COMAR on-call regulation, there is a great deal of case law (mostly federal, of course) applying the federal on-call regulation. Because "COMAR 17.04.11.02B(2) is intended to be a floor and not a ceiling[,]" *Palmer, supra*, 389 Md. at 455, 886 A.2d 554,

---

**8.** The words "own purposes," like "personal activities" in the State regulation, are also less than precise. In the second sentence of 29 C.F.R. § 785.17, the word "merely" also is a "qualifier." If that sentence were deemed potentially applicable to employees like appellants, it would have to be found that appellants did not "merely" have to leave word where they were while on call.

the breadth of the federal regulation *as applied* must be determined in order to give the COMAR regulation the *greater* breadth that, as *Palmer* made clear and we recognized on the first appeal, our legislature intended it to have. The ALJ did quote in his first decision from a federal appellate decision that found non-compensability under the federal on-call regulation, but it only stated the law of the 10th Circuit as of 1993.(E.8)

A comprehensive survey of more recent case law applying 29 C.F.R. § 785.17 appears necessary. In our first opinion, we said, referring to the required comparison of the State and federal regulations' breadth of coverage and application of provision with "the greater benefits": "The ALJ, not us, must make those determinations in the first instance, for it is the ALJ, as the final decision maker for the Department, who must construe the statutes and regulations it administers. *See Palmer,* 389 Md. at 452–453, 886 A.2d 554 (citing *Noland, supra,* 386 Md. at 573–574 n. 3, 873 A.2d 1145)." We do not find that the ALJ has made the appropriate determinations as yet.

Prior to the oral argument of this appeal we asked all counsel to be prepared to answer certain questions relating to the breadth of the federal courts' application of 29 C.F.R. § 785.17. Counsel then provided us with copies of the briefs filed on the first appeal, two of which did discuss some federal opinions. In addition, and more helpfully, we were provided with a copy of an "opinion letter" issued in an unnamed case in May 2008 by the Wage and Hour Division of the Employment Standards Administration of the U.S. Department of Labor. The case involved claims for compensation under the FLSA for on-call time by employees of an ambulance rescue service. One paragraph of the letter summarized pertinent case law as follows:

> As the Supreme Court has explained, where the facts demonstrate that an employee has been hired to spend time waiting to respond to the employer's needs, the employee is traditionally described as having been "engaged to wait," and such time constitutes compensable hours of work.

*Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944). On the other hand, where the restrictions on the employees' activities do not prevent them from pursuing their normal pursuits, such employees are described as "waiting to be engaged," and such time is not compensable. *Skidmore v. Swift & Co.,* 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The federal courts evaluate a variety of factors when determining whether an employee can use on-call time effectively for personal purposes, such as whether there are excessive geographical restrictions on an employee's movements, whether the frequency of the calls is unduly restrictive, whether a fixed time limit for response is unduly restrictive, whether the employee could easily trade on-call responsibilities, whether use of a pager could ease restrictions, and whether the on-call policy was based on an agreement between the parties. *See Reimer v. Champion Healthcare Corp.,* 258 F.3d 720, 724–25 (8th Cir.2001); *Pabst v. Okla. Gas & Elec. Co.,* 228 F.3d 1128, 1132 (10th Cir.2000); *Ingram v. County of Bucks,* 144 F.3d 265, 268 (3d Cir.1998); *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers,* 971 F.2d 347, 351 (9th Cir.1992); *Renfro v. City of Emporia,* 948 F.2d 1529, 1537 (10th Cir.1991); *Cross v. Ark. Forestry Comm'n,* 938 F.2d 912, 916 (8th Cir.1991); *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.,* 934 F.2d 671, 678 (5th Cir.1991). This list is illustrative, not exhaustive, and no one factor is dispositive.

We likewise present this summary as illustrative of the existence of a multi-factor balancing methodology that would be appropriate for the ALJ to pursue both in determining how a federal court would likely view appellants' claims, had they been made under 29 C.F.R. § 785.17, and in deciding whether the necessarily broader benefits conferred by COMAR 17.04.11.02B(1)(e) would entitle appellants to relief. We note that only five circuits are represented in the quoted paragraph's citations and that the most recent case cited was decided in 2001. We certainly do not assume that each of the United States circuit courts of appeals has a distinctive ap-

proach, but we would hope that the ALJ would become aware of varying, as well as shared, federal judicial views. Furthermore, in accordance with the recognized intent of SPP § 8–302, the federal "floor" that Maryland's on-call benefits must rise above should be based, from our state's perspective, on the holdings that are most generous to employees. More recent decisions applying the FLSA regulation should be surveyed for possible expansions of coverage.[9]

The Wage and Hours Division's opinion letter also demonstrates a creative approach to such claims in that it ultimately finds that the on-call time in issue is compensable during the winter, but not during the other seasons. These conclusions are significant because they show that the compensability of on-call time of the same employee may depend on conditions that change periodically. And in light of that insight, one of the appellants' attorneys suggested at oral argument that while it may be true, as the Department's attorney pointed out, that appellants' 1:00 to 9:00 p.m. regular duty shifts on weekdays during on-call weeks are what restrict many of their personal activities on those days,[10] they do not work such shifts on weekends; therefore, weekends (otherwise totally unrestricted) are when their on-call obligations have the greatest impact. Accordingly, it would be appropriate for the ALJ to consider whether a distinction should be made between weekday and weekend portions of on-call weeks.

We recognize that the ALJ did mention in his decision certain factors that federal courts would weigh, but he did so in an almost *a priori* fashion, without reference to the body of legal analysis of the federal regulation's coverage that is available to serve as a touchstone for determining the breadth

---

9. One development since this case arose that might weigh to some extent against benefit coverage would be the increase of general usage of cellular telephones.

10. Appellants did not base their claims on the particular hours of their on-duty shifts during their on-call weeks. However, it is worth noting that all of their on-call time was served in addition to full 40–hour weeks of on-duty time, which may distinguish their case from some that have been decided under the federal regulation.

of the state regulation's coverage. Among the relevant factors the federal courts' methodology would require weighing here, the practical effect of the Department's response-time limits surely would be central. Because none of the appellants had ever been disciplined, even though they were sometimes unable to reach pick-up sites within the two-hour limit, the ALJ found that the Department's policy in this respect is "directory in nature and not absolute and mandatory."

The Department asserted at oral argument that this conclusion was correct and material. Appellants countered, however, that they were never disciplined simply because they stayed at home while on call and consequently were delayed in arriving at the pick-up sites only by circumstances beyond their control.[11] The ALJ did not address this explanation in his decision, though doing so would seem essential. The record certainly does not suggest that either appellants or their supervisors in the Department have considered compliance with the response deadlines to be optional. Compliance indeed may have proved to be "not absolute[ly] mandatory," either, but the actual impact the deadlines have had on the employees' personal activities is not rendered irrelevant by such a label. On remand, therefore, the ALJ would be well advised to consider whether appellants reasonably understood that they risked discipline if they pursued personal activities away from their homes while on call.

The ALJ faulted the employees for "only provid[ing] the worst case scenario" in their testimony about the effects of their on-call obligations on their personal activities. Surely, however, prudent, responsible persons must use such scenarios in assessing risk to their livelihoods and deciding how to minimize it. Intertwined with the inquiry into appellants' reasonable perceptions of risk would be consideration of the frequency of the calls, another factor listed in the opinion

---

11. This position is supported, for example, in the hearing testimony of David Weimer, who also reported that his supervisor had become "very upset" on one occasion when he missed a page because he was mowing his large lawn and could not hear it.

letter's overview of the federal courts' methodology. The ALJ did note as a mitigating fact favoring the Department "the limited number of pages to which the employees had to respond." We do not believe, however, that it is self-evident that the relevance of this factor in some cases applying the federal regulation means that Maryland employees' rights to overtime compensation for mandatory on-call time require high mathematical odds of their being called, for example, during every on-call period (and thus of being disciplined if their personal activities prevent them from responding within the set time limits). Under *Palmer* and SPP § 8–302, any decision on COMAR 17.04.11.02B(1)(e)'s on-call benefits must take into consideration that they are broader than the broadest application of on-call benefits under 29 C.F.R. § 785.17. It seems at least possible that, adapting the federal courts' methodology and weighing all relevant factors, the state regulation's benefits would properly be found to extend to some, if not all, of the on-call time served by appellants.

**JUDGMENTS VACATED; CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE DEPARTMENT OF JUVENILE JUSTICE.**